

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

**Signed August 19, 2005**

**United States Bankruptcy Judge**

---

```
                IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF TEXAS
                          DALLAS DIVISION


IN RE:                         §
                               §
PRIVACY INFRASTRUCTURE,        §    CASE NO. 04-81245-SAF-11
INC.,                          §
      D E B T O R.             §
                               §
_____§
PECKOVER CHILDREN'S TRUST and  §
PECKOVER CORP.,                §
      PLAINTIFF(S),            §
                               §
VS.                            §    ADVERSARY NO. 04-3683
                               §
ROBERT YAQUINTO, CHAPTER 11    §
TRUSTEE,                       §
      DEFENDANT(S).            §
```

<u>**MEMORANDUM OPINION AND ORDER**</u>

Douglas Peckover ("Peckover") and the Peckover Children's
Trust bring this declaratory judgment action against Robert
Yaquinto, Jr., to declare the ownership of the stock of Demand
Engine, Inc. ("DEI").  Peckover Corp. and the trust had
originally filed the complaint.  At trial, the court dismissed
the complaint by Peckover Corp., but, upon stipulation of the

parties, substituted Peckover as the co-plaintiff.

On October 22, 2004, this court entered an order for relief on an involuntary petition against Privacy Infrastructure, Inc. ("PII"), the debtor.  On October 29, 2004, the court appointed Yaquinto the Chapter 11 trustee of PII.

The trustee listed the stock of DEI as an asset of the PII bankruptcy estate.  Peckover contends, in this declaratory judgment action, that the stockholders of PII own the stock of DEI.  The trustee and Privacy, Inc., jointly filed a plan of reorganization for Privacy and PII.  Section 9.4 of the plan provided for a settlement between DEI and PII premised on a court finding that DEI was a wholly-owned subsidiary of PII.  On April 6, 2005, the court entered an order confirming the plan and deferring a determination of the DEI stock ownership issue to this adversary proceeding.  The plan became effective on May 6, 2005.

In a nutshell, Peckover contends that the stockholders of PII own the stock of DEI.  The trustee contends that PII owns the stock of DEI.  The court conducted a trial on June 16, 2005, June 17, 2005, June 29, 2005, and July 8, 2005.  The determination of whether property constitutes property of a bankruptcy estate is a core matter over which this court has jurisdiction to enter a final judgment or order.  28 U.S.C. §§ 157(b)(2)(A) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law.  Bankruptcy Rule 7052.  Peckover has the

-2-

burden of proof by a preponderance of the evidence. See Eidson
v. Perry Nat'l Bank, 327 S.W.2d 683 (Tex. Civ. App. 1959); Davis
v. Fraser, 319 S.W.2d 799, 807 (Tex. Civ. App. 1958)("The burden
of proof is on the plaintiffs to establish their present
ownership of the lost [stock] certificate by a preponderance of
the evidence.")

### Facts

PII was initially incorporated under Texas law on January
31, 1996, under the name "@workandplay, Inc." PII changed its
name to Personal Agents, Inc., on February 9, 1996, then to
@YourCommand, Inc., on June 15, 1999, and finally to PII on
January 2, 2001. Peckover was a founder of PII and from 1996 to
at least October 22, 2004, the majority shareholder of PII, a
director of PII, and a control person of PII.

PII had two lines of business in 1999: a "demand" line of
business and a "privacy" line of business. Beginning in 1999,
PII considered separating the two lines of business. Vernell
Guest, the chief executive officer in early 2000, and charged by
PII to raise capital, testified that PII discussed financing with
Tower Hill Capital Group. To facilitate a Tower Hill investment,
Guest testified that PII considered a spinoff of the demand line
of business. She discussed a tax-free transaction for PII
stockholders, with the spin-off corporation assuming the assets
and liabilities of the demand side of the business.

On April 10, 2000, at a special meeting of the board of directors of PII, the directors discussed the separation of the lines of business as well as a name change for PII.  The board approved a resolution determining that it would be in the best interest of PII "to evaluate the possibility of separating the assets and liabilities of [PII] into two entities."  The board referred to the demand entity as the "spinoff."  The board observed that a spinoff might maximize the value of the two lines of business.  The board resolved "the Spinoff proposal shall be submitted for approval by the [PII] shareholders at the Annual Stockholders Meeting."  The board further authorized a PII name change and directed that the officers obtain shareholder approval.

PII held its annual shareholders meeting the next day, April 11, 2000.  Even though the board premised its April 10, 2000, resolution on an evaluation of the possibility of a spinoff, Peckover presented a spinoff resolution at the annual shareholders meeting.  Guest informed the shareholders that Tower Hill expressed an interest in forming a joint venture with PII and that Tower Hill was proceeding with its due diligence.  The shareholders considered two resolutions:  changing the corporate name and approving "the spinoff of Demand Engine line of business to NewCo with existing shareholders receiving one share of NewCo for each share of @YourCommand."  According to the minutes of the shareholders meeting, the shareholders approved both resolutions.

-4-

Peckover introduced the minutes of the meeting and the
shareholder ballots at the trial, but not the resolutions.

Following the shareholder meeting, on April 11, 2000, the
PII board met.  The board adopted the following resolution:

> WHEREAS, the stockholders of the Corporation
> have voted and approved the creation of an
> entity with the assets and liabilities
> associated with demand quantification (a
> "*Spinoff*") into a new corporation (a "*NewCo*")
> with existing shareholders receiving one
> share of the NewCo for each share of the
> Corporation, be it
>
> RESOLVED, that the Officers of the
> Corporation are hereby instructed to evaluate
> the Spinoff in regards to the financing of
> the Corporation, and, if the Officers deem it
> appropriate to maximize the value of the
> Corporation's privacy and demand
> quantification lines of businesses in
> separate but more focused efforts, be it
>
> FURTHER RESOLVED that the Corporation's
> Officers are hereby authorized and directed
> to take the necessary actions required to
> effect the Spinoff upon such terms (including
> any licenses and cross-licenses of the
> respective entities' intellectual property)
> as the Officers deem advisable and in the
> Company's best interests.

Exhibit O.

Guest testified that shortly thereafter Tower Hill
determined not to proceed with an investment in PII.  Peckover
testified that Guest handled the Tower Hill negotiations.  By May
2000 discussions of a Tower Hill transaction ended.  Guest left
the corporation.

Despite Tower Hills' withdrawal, Peckover worked with PII's

-5-

corporate attorneys to pursue a spinoff anyway. The attorneys prepared a checklist of documents to be drafted and executed for a spinoff of the demand line of business.

On December 29, 2000, DEI was incorporated. The initial sole shareholder of DEI was PII. Beyond those two undisputed facts, the record is ambiguous as to the actions of the board of directors on December 29, 2000.

Peckover and the other two PII board members, Ralph Poore and Ed McDunn, signed documents entitled "Consent by the Board of Directors," which they hand-dated December 29, 2000, although the record also contains typed-dated but unsigned versions, as well. The "consent" form refers to an "Exhibit A." Peckover, Poore, and McDunn all testified that Exhibit A was not attached to the consent form they each signed. Peckover testified that the attorneys had prepared Exhibit A. Peckover testified that the attorneys attached Exhibit A to the consent forms after receipt of the executed consents. No attorney involved in the transaction testified.

Exhibit A included both a name change and the spinoff authorization. Poore and McDunn both testified that they understood that they were only acting on the name change. They understood that execution of the consent form was time-sensitive regarding year-end transactions, but did not know why. Again, the lawyers who prepared the documents did not testify.

In addition to the name change, Exhibit A, although not

-6-

attached to the consent form, contained a resolution that
provided for a 10 to 1 stock split of PII stock and for the
spinoff of the demand line of business.  The resolution for the
spinoff stated:

> WHEREAS, the Board of Directors of the Corporation
> deems it to be in the best interests of the Corporation
> to form a subsidiary of the business (the "*Newco*") as
> an independent entity under the name of Demand Engine,
> Inc. and that Newco's shares be distributed to the
> shareholders of the Corporation (the "*Distribution*").
>
> WHEREAS, the Corporation shall own all the outstanding
> shares of the capital stock of the Newco, and
>
> NOW, THEREFORE, BE IT RESOLVED, that the formation of
> the Newco is hereby authorized, adopted, and approved;
>
> FURTHER RESOLVED, to effect the Distribution, the
> outstanding shares of the capital stock of the Newco be
> distributed to the holders of the record of the Common
> Stock of the Corporation at the rate of one share of
> the Newco for each share of the Corporation held on the
> Record Date after giving effect to the 10-for-1 stock
> split;
>
> FURTHER RESOLVED, that no fractional shares of the
> Newco or scrip will be issued and that shareholders of
> the Corporation entitled to fractional share interests
> may purchase for their respective accounts the
> additional fractional shares needed to make up a full
> share, at the market price prevailing on the date of
> purchase;
>
> FURTHER RESOLVED, that a notice be sent to all holders
> of the Common Stock of the Corporation advising them of
> the action taken by the Board of Directors; and
>
> FURTHER RESOLVED, that the directors and officers of
> the Corporation be, and they hereby are, authorized,
> empowered and directed, in the name and on behalf of
> the Corporation to do all other acts, take all actions,
> waive any and all conditions and to prepare all papers,
> instruments and documents in connection therewith which
> they, in their sole discretion, deem necessary,

appropriate or desirable in order to accomplish and
carry out the purposes and intent of the foregoing
resolutions and any and all actions previously carried
out in connection herewith and they hereby are
ratified, confirmed, approved and adopted as the
official acts and deeds of the Corporation.

Exhibit S.

The resolution is inherently contradictory. It provides for
the formation of Demand Engine, Inc., as a "subsidiary" of the
business and that its shares of stock "be distributed to the
shareholders of [PII]," but the resolution separately provides
that "[PII] shall own all the outstanding shares of the capital
stock of [Demand Engine, Inc.]." To effectuate the distribution,
the board resolved that the outstanding shares of the capital
stock of Demand Engine, Inc., be distributed to the holders of
record of the stock of PII at the rate of one share of Demand
Engine, Inc., for each share of PII after the ten-for-one split.

PII owned the DEI stock as of December 29, 2000. Other than
Exhibit A, Peckover presented no board resolution expressly
declaring a dividend of DEI stock to be issued to PII
shareholders. Exhibit A authorized the directors to take any
action needed to implement the resolution. Peckover presented no
minutes of a board meeting discussing the spinoff process.
Peckover presented no memorandum from the corporation's attorneys
to the directors explaining the process.

Poore and McDunn testified that they both thought they were
voting for the name change only on December 29, 2000. Peckover

-8-

complains that they had no basis for that position, while ignoring the name change discussion at the April meeting and in Exhibit A. Poore and McDunn further testified that they thought the spinoff would not be pursued because of Tower Hill's withdrawal. Both also testified that they anticipated that any spinoff would require the assumption of assets and liabilities by DEI of the demand line of business, with the spinoff having no tax consequences for stockholders of PII.

Effective January 1, 2001, Peckover, as president of PII and DEI, executed a contribution agreement. That agreement proposes for PII to provide demand assets in exchange for DEI common stock. The agreement provides for 101,092 shares of DEI to be issued to PII. The agreement schedules assets but no liabilities. Peckover testified that PII had no demand-related liabilities at the time. As found above, PII obtained the shares of DEI stock. A purported list of PII shareholders is attached to the copy of the contribution agreement introduced in evidence. The list reflects holders of 1,010,920 shares of stock, which would be consistent with a ten-for-one stock split. But Peckover conceded that the list was not accurate. The list showed Peckover Corp. with 600,000 shares, but Peckover Corp. did not own shares. Peckover produced no evidence of any board action to issue by dividend shares of stock of DEI from PII to PII's shareholders.

Peckover testified that PII's attorneys had prepared stock

-9-

certificates for DEI stock in the names of PII shareholders. No attorney testified to the preparation of DEI stock certificates in the name of PII's shareholders. The attorney's time records reflect review of the stock ledger and discussion of stock certificates in April and May 2001, but no description of the actual preparation of DEI stock certificates in the names of PII shareholders. Peckover introduced no board of director action authorizing or even recognizing the creation or issuance of DEI stock for PII shareholders in April or May 2001.

Peckover testified that he had the DEI stock certificates in May 2001 but lost them. He testified at a Bankruptcy Rule 2004 examination that he created the stock certificates in 2001, which he produced to the trustee in 2004. Peckover did not create the certificates he produced to the trustee in 2001. In fact, he created these stock certificates in 2004. Peckover introduced no evidence of any board of director action ratifying or recognizing the issuance of any such stock certificates.

DEI stock certificates have never been delivered to PII shareholders.

## Analysis

The commencement of a bankruptcy case under 11 U.S.C. § 303 creates an estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). An involuntary case was commenced against

-10-

PII under § 303 on October 15, 2004. On that date, PII held the
stock of DEI. No other person held a stock certificate of DEI
stock. No other DEI stock certificate existed on that date.
Peckover created DEI stock certificates after the commencement of
the case. That act violated the automatic stay of 11 U.S.C.
§ 362 and may be declared void by this court. In re Coho Res.,
Inc., 345 F.3d 338 (5th Cir. 2003); In re Jones, 63 F.3d 411 (5th
Cir. 1995); Picco v. Global Marine Drilling Co., 900 F.2d 846
(5th Cir. 1990).

     Peckover contends that the board of directors of PII on
December 29, 2000, authorized the spinoff of the demand business
into DEI with DEI stock to be owned by PII shareholders. As a
matter of fact, the action of the board on that date is ambiguous
at best. Peckover, Poore and McDunn, the directors, all signed
consent forms adopting resolutions on an Exhibit A, which was not
attached to the consent form and was not presented to the
directors with or prior to their execution of the consent. Two
of the three directors thought the consent form only covered a
name change. Indeed, the Exhibit A does provide for a name
change.

     Peckover argues that Exhibit A also provides for the
creation of DEI with a resolution authorizing the issuance of the
DEI stock to PII shareholders as a PII dividend. Exhibit A is
also ambiguous, however. It provides for the creation of DEI as
a "subsidiary" of PII. It provides that PII "shall own all the

-11-

outstanding shares of [DEI]." It further provides that DEI stock
be distributed to PII shareholders. It provides that to
facilitate the distribution, outstanding shares of DEI stock be
distributed to the [PII] shareholders after effecting a ten-for-
one stock split. Thus, Exhibit A provides that PII owns the DEI
stock as a subsidiary and that the stock "be distributed" to PII
shareholders after effecting a stock split. That ambiguity
connotes a further step to be performed by the board pursuant to
an implementing resolution, namely, that the board perform the
distribution after a subsequent event, the stock split. The
board never authorized the next step.

Peckover executed the contribution agreement, but it
expressly recognizes that PII owns the DEI stock. The
contribution agreement refers to the number of shares of DEI
stock before any PII ten-for-one stock split. The contribution
agreement does not contain any provision providing for a
distribution of DEI stock to PII shareholders. The contribution
agreement does not reference or incorporate the attached list of
PII stockholders that reflects a ten-for-one stock split. And,
in any event, that stock list is not an accurate listing of PII
shareholders.

More fundamentally, Poore and McDunn testified that they
believed the spinoff had not been effectuated. The PII
shareholders and board of directors resolved to pursue a spinoff
in April 2000, but that had been premised on a presentation

-12-

regarding a venture with Tower Hill. That venture did not materialize, causing the chief executive officer, Guest, to resign by May 2000. On April 10, 2000, the board resolved to "evaluate" a spinoff based on the presentation of the separation of the demand line of business. Nevertheless, the next day, on April 11, 2000, the shareholders of PII approved a spinoff, even though no such evaluation could have been performed overnight. Indeed, the board followed the shareholder meeting on April 11, 2000, with a resolution to "evaluate" a spinoff. Peckover produced no corporate evaluation of a spinoff that would support the Exhibit A in December 2000.

Peckover testified that he had discussed the ongoing process with Poore and McDunn prior to the December 29, 2000, action, but they did not understand that a spinoff was to be completed. They knew that Tower Hill had pulled out of the proposed transaction. They understood that any spinoff would involve the assumption of all demand assets and liabilities, without tax consequences, to PII shareholders. Peckover produced no evidence of corporate actions to reflect completion of an evaluation of the spinoff prior to the Exhibit A, which Peckover contends would constitute the PII board declaration of a dividend of DEI stock to PII shareholders.

Considering that the consent forms had been provided to the directors in blank without any attachment for execution and that the attorneys did not testify regarding their acts and

-13-

understandings, the court cannot find that Peckover met his
burden of establishing that the PII board issued a dividend of
DEI stock to PII shareholders on December 29, 2000. As found
above, subsequent events confirm this finding of a failure of
proof.

Under the Texas Business Corporation Act ("TBCA"), a Texas
corporation may distribute property by issuing a dividend to its
shareholders, providing the board of directors authorizes the
distribution and does so consistent with the corporation's
articles of incorporation and the Texas Business Corporation Act.
V.A.T.S. Bus. Corp. Act. Art. 1.02.A(13) and 2.38. The TBCA
provides that a distribution may not be made if the corporation
would be insolvent or the distribution exceeds the surplus of the
corporation. Id., at Art. 2.38.

As found above, the December 29, 2000, consent forms do not
establish that the PII directors issued a dividend of DEI stock
to PII. Furthermore, without the purported value of DEI, PII
would have been insolvent on December 29, 2000. Peckover
testified that the demand line of business should have been
valued at $11,000,000, and had no liabilities in December 2000.
If that asset had been removed as a subsidiary of PII, PII would
have been insolvent. PII actually ceased operations shortly
thereafter. A dividend of DEI stock would be inconsistent with
Texas law. That supports the court's finding that Peckover did
not establish that the PII board authorized the issuance of a

-14-

dividend in December 2000.

Peckover argues that an incorrectly issued dividend cannot be voided. Rather, the remedy is an action against the directors who, in turn, could bring an action against the shareholders for contribution. See In re Dondi, 119 B.R. 106, 110-112 (Bankr. N.D. Tex. 1990). Alternatively, the trustee could bring an avoidance action against the shareholders. 11 U.S.C. §§ 544, 548, 550. Peckover misses the point. The trustee does not seek to avoid the issuance of the dividend in this adversary proceeding. Rather, he seeks a declaration that the DEI stock had never been removed from PII ownership by the declaration of a dividend. He invokes the Texas Business Corporation Act in support of that position.

Similarly, a spinoff of DEI stock to PII shareholders would not, without more, be consistent with the merger provisions of the TBCA. Article 1.02.A(18)(a) of the TBCA defines a merger to include "the division of a domestic corporation into . . . a surviving corporation and one or more new domestic corporations." Under Peckover's approach to the case, the spinoff would be considered a merger under Texas law. But Peckover has not established that the spinoff complied with the merger requirements under the TBCA. No "plan of merger" was adopted by PII's board of directors under Article 5.01.A and/or no document of any name was adopted by PII's board of directors which met the requirements of a "plan of merger" under Article 5.01.B of the

-15-

TBCA. To the extent Peckover claims that a "contribution agreement" is a plan of merger, the argument fails for several reasons: (1) There are at least two versions of the contribution agreement in existence; (2) the contribution agreements were not in existence until well after the April 2000 board and shareholder "votes"; and (3) the contribution agreements do not follow the alleged votes as they relate to (a) "the manner and basis of allocating and vesting . . . property . . . among one or more of the surviving or new domestic . . . corporations . . ."; and (c) "the manner and basis of allocating . . . liabilities and obligations of each" of the two companies, see TBCA Art. 5.01.B(2)(a) & (c); and (4) the contribution agreements did not attach the articles of incorporation of DEI as an exhibit, see TBCA Art. 5.01.B(4). Even if there was a "plan of merger" validly adopted by PII's board, there is no proof that PII's shareholders were given a written notice twenty days before the meeting that: (a) stated that one of the purposes of the meeting was to consider the plan of merger and (b) contained or was accompanied with a copy or summary of the plan of merger. See TBCA Art. 5.03.D. Even if PII's shareholders were given timely and proper notice, there is no proof that two-thirds of the shareholders affirmatively voted in favor of the plan of merger or exchange. See TBCA Art. 5.03.E. Lack of compliance with the merger requirements lends further support to the conclusion that Peckover has not established that PII issued the DEI stock to PII

-16-

shareholders.

Issuance of a dividend of DEI stock would not be consistent with PII's articles of incorporation. TBCA Art. 2.38., Distributions, provides:

> A. The board of directors of a corporation may authorize and the corporation may make distributions subject to any restrictions in its articles of incorporation and to the limitations set forth in this Article.

> B. A distribution may not be made by a corporation if: (1) after giving effect to the distribution, the corporation would be insolvent; or (2) the distribution exceeds the surplus of the corporation.

Article 2.38-1., Share Dividends, provides:

> A. The board of directors of a corporation may authorize and the corporation may pay share dividends subject to any restrictions in its articles of incorporation and to the limitations set forth in this Article.

> B. A share dividend payable in authorized but unissued shares may not be paid by a corporation if the surplus of the corporation is less than the amount required by this Article to be transferred to stated capital at the time that share dividend is paid.

In April 2000, the PII shareholders authorized the board to pursue a spinoff but the board, before and after the shareholder's meeting, only approved an "evaluation" of a spinoff. The board in December 2000 incorporated DEI with its stock owned by PII. Peckover has not met his burden of proof establishing that thereafter the board transferred by dividend the DEI stock to the PII shareholders. As of the commencement of

-17-

the PII bankruptcy case, the DEI stock became property of the PII bankruptcy estate. Peckover's request for a declaratory judgment must, therefore, be denied and the trustee's request granted.

The trustee requests the award of attorney's fees. Under both Texas and federal law, the court has discretion to award attorney's fees. In a declaratory judgment action, Texas cases establish that the trial court may award either side costs and reasonable and necessary attorney's fees as are equitable and just. Arthur M. Deck & Assoc. v. Crispin, 888 S.W.2d 56 (App. 1 Dist. 1994). The Texas Declaratory Judgments Act does not require an award of attorney's fees to the prevailing party; rather, it provides that the court "may" award attorney's fees. Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741 (App. 8 Dist. 2000). See also City of Pasadena v. Gennedy, 125 S.W.3d 687 (App. 1 Dist. 2003) (The Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law.); V.T.C.A., Civil Practice & Remedies Code § 37.009.

Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, "necessary or proper relief based on a declaratory judgment... may be granted against any adverse party whose rights have been determined by such judgment," and thus the award of attorney's fees is entrusted to the sound discretion of

-18-

the trial court.  Texas Commerce Bank Nat'l Ass'n v. Capital
Bancshares, Inc., 907 F.2d 1571, 1574 (5th Cir. 1990).

On this record, the trustee should recover his attorney's
fees.  Peckover failed to meet his burden of proof, yet he
conceded that he had not previously testified honestly regarding
the stock certificates.  Despite an ambiguous documentary record,
Peckover produced no attorney involved in the transaction to
testify in support of his contention, yet the other two board
members testified that PII did not transfer its DEI stock to its
shareholders.  The court exercises its discretion to award
attorney's fees.

The trustee shall submit a fee reimbursement request with a
supporting affidavit within twenty days of the entry of this
order.  Peckover may file an objection to the request within
twenty days of service.  Either side may request an evidentiary
hearing on the request.  Counsel for the trustee is reminded to
exercise reasonable billing judgment when submitting the request.

**Order**

Based on the foregoing,

**IT IS ORDERED** that the request by Douglas Peckover and the
Peckover Children's Trust for a declaration that the stock of
Demand Engine, Inc., was owned by the shareholders of Privacy
Infrastructure, Inc., as of the commencement of the PII
bankruptcy case is **DENIED**.

-19-

**IT IS FURTHER ORDERED** that the request of Robert Yaquinto, PII Chapter 11 trustee, that PII owned the stock of DEI as of the commencement of the PII bankruptcy is **GRANTED.**

**IT IS FURTHER ORDERED** that the request of Robert Yaquinto, PII Chapter 11 trustee, for an award of attorney's fees is **GRANTED.** The court shall award attorney's fees following the above procedure.

Upon the award of attorney's fees by subsequent court order, counsel for the trustee shall prepare a final judgment consistent with this order.

**IT IS SO ORDERED.**

###END OF ORDER###